Max Bloom, J.
Plaintiff brings suit for an injunction restraining the District Attorney of Bronx County from requiring his appearance before the Grand Jury to testify with respect to a specific matter. Pending trial, he seeks an order setting aside the subpoena heretofore served upon him. Relief is sought under the Fifth, Sixth and Fourteenth Amendments to the Federal Constitution.
The fact situation giving rise to the alleged need for judicial intervention arises out of a fairly simple set of circumstances. In the latter part of 1967 the District Attorney of Bronx County *219 undertook an investigation into an alleged realty fraud. This investigation disclosed that one Howard E. Spier sought a mortgage on certain real property. In order to obtain the mortgage it became necessary for the title search to show the property free from incumbrances. Spier enlisted the co-operation of one Jacob Rosen, an employee of Lawyers’ Title Insurance Co. With his assistance, Spier was enabled to exhibit a title search which showed no incumbrances, although such incumbrances did, in fact, exist.
The end result of these shenanigans was the granting of a first mortgage to 212 Equities, Inc., a Spier corporation, in the sum of $175,000. The mortgage was insured by Lawyers’ Title. Upon default in payments under the mortgage it was disclosed that prior liens, in fact, existed. Lawyers’ Title then paid the principal amount of the mortgage to Local 32E, Building Service Employees International Union, the mortgagee.
On April 2, 1968 Rosen was called as a witness before the Grand Jury. In order to compel his testimony, statutory immunity was granted to him. He admitted his part in the fraud. Later the same month Spier appeared before the Grand Jury, waived immunity, and admitted his complicity in the fraud. He implicated plaintiff as a party by testifying that he had paid plaintiff the sum of $20,000 to act as the go-between in effecting the loan. This sum was to be used in bribing the parties whose approval was necessary to effectuate the mortgage. Additionally,. plaintiff was to receive from Spier the sum of five to six thousand dollars for his services in greasing the necessary wheels.
In May, 1968 plaintiff conferred with a representative of the District Attorney’s office. He was shown a memorandum previously subpoenaed by the District Attorney and admitted that the writing was in his hand. He asserts that he refused to answer any further questions. However, there seems to be some dispute as to this.
On June 12, 1968 plaintiff was indicted by the Grand Jury on the charge of conspiracy to bribe labor officials. Pending trial of this matter, Spier, who had previously been indicted, pleaded guilty to grand larceny in the first degree. . Rosen, who was facing disbarment charges, resigned from the Bar.
Plaintiff went to trial on the indictment against him on March 12, 1969. He did not testify at that trial. On March 27, 1969, after the entire case was in, plaintiff won a directed verdict of acquittal. Thereupon, while plaintiff was exiting from the courtroom, he was served with the subpoena which is here the subject of contention. A motion to quash, bottomed on the assertion *220 that plaintiff, a nonresident, was immune from service under the circumstances indicated, was denied at Special Term. The Appellate Division reversed and ordered a hearing (Matter of Lawlor v. Roberts, 33 A D 2d 542). Plaintiff then abandoned his technical objection and instituted suit in the United States District Court for the Southern District of New York for the same relief involved in the instant action, and brought on a motion for a temporary injunction seeking the immediate relief now sought on this motion. In a brief discussion, Judge Oaít-WBLX.A denied the application, holding, among other things, that there was no allegation that plaintiff had exhausted all his State court remedies. Thereupon, the instant action was instituted.
Plaintiff asserts that compelling him to testify before the Grand Jury will violate his rights under the Fifth and Fourteenth Amendments (Malloy v. Hogan, 378 U. S. 1); and that the statutory exclusion of all except authorized persons from the Grand Jury room (Code Crim. Pro., §§ 255-259), including, necessarily, the plaintiff’s attorney, will violate his rights under the Sixth and Fourteenth Amendments in that it will deprive the plaintiff of his right to counsel (Gideon v. Wainright, 372 IT. S. 335).
I
Concededly, the reach of the Fifth Amendment covers compelled testimony before a Grand Jury (Hoffman v. United States, 341 U. S. 479; United States v. Monia, 317 U. S. 424; Blau v. United States, 340 U. S. 159; United States v. Wolfson, 405 F. 2d 779, cert. den. 394 U. S. 946). Plainly, however, the language of the amendment is concerned with a substantive offense already committed. It does not deal with an offense the perpetration of which may take place during the testimony before the Grand Jury (People v. Ianniello, 21 N Y 2d 418, cert. den. 393 U. S. 827; People v. Tomasello, 21 N Y 2d 143).
If plaintiff is questioned about the transactions before the Grand Jury he may invoke his Fifth Amendment privilege. If, as indicated by the District Attorney, transactional immunity is conferred, the plaintiff will then be required to answer. When he does, he must answer truthfully, for such grant of immunity will not protect against perjury committed before the Grand Jury (People v. Tomasello, supra; United States v. Winter, 348 F. 2d 204, cert. den. 382 U. S. 955; United States v. Bufalino, 285 F. 2d 408). So long, however, as the grant of immunity is of sufficient breadth to protect the plaintiff from prosecution for any crimes disclosed by his testimony before the Grand Jury *221 in connection with the transaction in question, he may not be heard to assert that his Fifth Amendment rights have been infringed (Code Crim. Pro., § 619-c; Matter of Grand Jury [Cioffi], 8 N Y 2d 220).
II
The right to counsel in criminal proceedings has been firmly established by Gideon (supra). Indeed, it has been expanded to include investigatory phases where the defendant is a prime target (Escobedo v. Illinois, 378 U. S. 478; People v. Gunner, 15 N Y 2d 227; People v. Donovan, 13 N Y 2d 148).
However, here the plaintiff does not appear to be the target of the investigation. Indeed, the District Attorney claims to seek his testimony for the purpose of ascertaining who received the $20,000 purportedly paid out in bribes. Thus, the plaintiff’s testimony is sought not for use against him but against others. Indeed, since transactional immunity is promised, use of plaintiff’s testimony against plaintiff is forbidden (People v. Ianniello, supra; Matter of Gold v. Menna, 25 N Y 2d 475). Inasmuch as the testimony to be given by plaintiff will not be susceptible of use against him, the very basis for the constitutional right to counsel is no longer applicable (cf. Miranda v. Arizona, 384 U. S. 436).
Moreover, since the proceedings of the Grand Jury are mandated by law to be .secret except as otherwise provided by law (Code Crim. Pro., §§ 255-259; People v. Ianniello, supra), the exclusion of an attorney for a witness neither deprives him of the right to counsel nor of due process. Particularly is this true in light of the right of the witness, in a proper situation, to leave the Grand Jury room to confer with his lawyer (People v. Ianniello, supra). Hence, it is plain that, to the extent, if any, which a Grand Jury witness may have to the right of counsel, that right will not here be infringed.
III
Although the plaintiff’s request for relief is couched in constitutional terms, the actual thrust of his argument is directed to the broad equity power of the court. In substance, it is contended that when he was interviewed by a member of the District Attorney’s staff prior to his indictment, he did no more than admit that the memorandum shown to him was in his handwriting. Apparently, the defendant takes a contrary view for, upon the trial of the indictment, a member of his staff took the *222 witness stand to testify to the content of the interview. The plaintiff now asserts that if he takes the stand before the Grand Jury (parenthetically, the same Grand Jury which previously indicted him), and denies any knowledge of the alleged bribes, in light „of the contradictory testimony of Spier and, presumptively, of the Assistant District Attorney who interviewed him, he would be subjected to an indictment for perjury. This, he claims, brings this case within the ambit of Chandler v. Garrison (286 F. Supp. 191, affd. 412 F. 2d 857), and warrants the granting of the injunction.
The circumstances in Chandler were extraordinary and peculiar, to say the least. There, plaintiff charged that defendant, the District Attorney of Orleans Parish, and his first assistant were conniving to procure the indictment of plaintiff under the false swearing laws of Louisiana. Underlying the alleged persecution of plaintiff were certain articles written by him and published in Life Magazine dealing with “ organized crime” in New Orleans and with corruption in the District Attorney’s office.
Both defendant and his first assistant had charged plaintiff with being “a liar”. Indeed, there was disputed testimony that defendant, in a conversation with the Governor, virtually conceded that his purpose in calling plaintiff was to have him charged with perjury or false swearing.
Thus, it is plain that Chandler depends, for-its vitality, on proof that there exists a conspiracy, the purpose of which is to procure the indictment of the witness. Inherent in the holding is the bad faith of the District Attorney in calling him.
No such situation here exists. Spier, concededly was guilty of a crime. So, too, was Rosen who escaped prosecution only through the grant of immunity. Their implication of plaintiff has been shown to be ” not proven ’ ’. But, that does not establish that he does not possess information of essential elements of the conspiracy to commit bribery. Indeed, plaintiff makes no statement under oath asserting that he has no such knowledge.
No showing of bad faith on the part of the District Attorney has been made nor is anything of substance indicated from which it may be assumed that plaintiff’s indictment for perjury is being connived at. Absent such a showing, his appearance before the Grand. Jury cannot be held to be an invasion of his rights. The motion to quash the subpoena is, therefore, denied.